# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### EASTERN DIVISION

| | |
|---|---|
| **EMPLOYERS MUTUAL CASUALTY COMPANY, an insurance company incorporated in the State of Iowa,** )<br>)<br>)<br>)<br>) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case No.: 1:11-CV-3528-VEH** |
| ) | |
| **SMITH CONSTRUCTION & DEVELOPMENT, LLC; CHARLES L. SMITH; WILLIAM WALDRIP; and LAURA WALDRIP,** )<br>)<br>)<br>) | |
| ) | |
| **Defendants.** )<br>) | |

---

## MEMORANDUM OPINION

Before the court is the Motion for Summary Judgment (Doc. 25) filed by

Plaintiff Employers Mutual Casualty Company ("EMC"). The court has considered

the arguments made in the following documents:

- EMC's "Memorandum Brief in Support of Its Motion for Final Summary Judgment" (Doc. 26);

- A Response (Doc. 30) filed by Defendants Charles Larry Smith and Smith Construction & Development, LLC ("the Smith Defendants");

- A Response (Doc. 31) filed by Defendants William and Laura Waldrip ("the Waldrips");

- A Reply (Doc. 32) by EMC to the Smith Defendants; and

- A Reply (Doc. 35) by EMC to the Waldrips.

For the following reasons, EMC's motion is **GRANTED in part** and **DENIED in part**.

## I. Procedural Posture

EMC filed the present action on September 30, 2011. (Doc. 1). It seeks declaratory judgment that it owes no insurance coverage to the Smith Defendants under the Commercial General Liability ("CGL") Policy it issued them. The Waldrips and the Smith Defendants filed their respective Answers on November 16, 2011. (Docs. 9, 10).

On September 28, 2012, EMC filed the instant motion for Summary Judgment. (Doc. 25). It filed a supporting brief and evidentiary material on the same date. (Docs. 26, 27). The Smith Defendants and the Waldrips each filed Response briefs on November 19, 2012. (Docs. 30, 31). On December 10, 2012, EMC replied separately to each brief. (Docs. 32, 35).

## II. Jurisdiction

This court is authorized to issue declaratory judgments under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202 (2012), which provides in relevant part:

> In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree . . .

28 U.S.C. § 2201(a) (2012). The Declaratory Judgment Act does not itself confer subject matter jurisdiction upon the federal courts. *Stuart Weitzman, LLC v. Microcomputer Res., Inc.*, 542 F.3d 859, 861-62 (11th Cir. 2008) (citations omitted). Rather, the plaintiff must allege facts showing that the controversy is within the court's original jurisdiction. *Household Bank v. JFS Group*, 320 F.3d 1249, 1253 (11th Cir. 2003) (citing 28 U.S.C. § 2201(a)). Neither party contests subject matter jurisdiction here, which arises under the court's "diversity of citizenship" jurisdiction. *See* 28 U.S.C. § 1332(a)(1) (2012). Further, the court finds that diversity jurisdiction is sufficiently alleged. Whether or not to exercise its authority to proceed in a declaratory judgment action is a matter committed to the sound discretion of the district court. *See Wilton v. Seven Falls Co.*, 515 U.S. 277, 289-90 (1995) ("[D]istrict courts' decisions about the propriety of hearing declaratory judgment actions, which are necessarily bound up with their decisions about the propriety of granting declaratory relief, should be reviewed for abuse of discretion.").

## III. Factual Background[1]

The following relevant facts are not in dispute:

- On or about September 15, 2010, the Waldrips filed the underlying state court action against the Smith Defendants (the "underlying suit" or "underlying action").[2]

- The underlying suit centers on the construction of the Waldrips' single-family residence in Talladega County, Alabama.

- That construction was to be performed according to the terms of a contract formed between the Waldrips and the Smith Defendants on December 17, 2007.

- The Waldrips assert the following claims against the Smith Defendants in the underlying action:

  1.    Negligence of construction;
  2.    Fraudulent misrepresentation;
  3.    Innocent misrepresentation;
  4.    Deceptive trade practices; and
  5.    Breach of contract.

---

[1]Keeping in mind that when deciding a motion for summary judgment the court must view the evidence and all factual inferences in the light most favorable to the party opposing the motion, the court provides the following statement of facts. *See Optimum Techs., Inc. v. Henkel Consumer Adhesives, Inc.*, 496 F.3d 1231, 1241 (11th Cir. 2007) (observing that, in connection with summary judgment, a court must review all facts and inferences in a light most favorable to the non-moving party) (citation omitted). This statement does not represent actual findings of fact. *See In re Celotex Corp.*, 487 F.3d 1320, 1328 (11th Cir. 2007). Instead, the court has provided this statement simply to place the court's legal analysis in the context of this particular case or controversy. Further, due to the nature of this court's decision on summary judgment, the foregoing statement of facts is limited in scope. More specifically, facts that are not material to the court's ruling on summary judgment have not been included in this background.

[2]The underlying suit is styled *Laura Waldrip, et al, v Charles L. Smith, et al*, Case No. CV-2010-900299.00. It is pending in the Circuit Court of Talladega County, Alabama.

- The Waldrips specifically allege in the underlying suit that the "abandonment of the construction of the home left the structure exposed to the elements. As a result, [the homeowners] assert that moisture caused deterioration of certain building components and mold growth is present throughout the home . . ."

- On February 1, 2007, EMC issued CGL Policy Number 3D5-11-83 ("the Policy") to the Smith Defendants.

- The Policy was originally effective through February 1, 2008, but was renewed through February 2, 2011.

- The Policy was thus in force at the time the Waldrips' claims arose.

- On or about October 29, 2010, the Smith Defendants were served in the underlying action.

- On or about November 4, 2010, the Smith Defendants filed an Answer and Counterclaim against the Waldrips in the underlying action.

- On or about January 6, 2011, the Smith Defendants notified EMC of the underlying suit.

- EMC is defending the Smith Defendants in state court under a full reservation of rights.

- The Insuring Agreement of the Policy provides as follows:

  a.   We [EMC] will pay those sums that the insured [Smith Defendants] becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply . . .

5

    b.    This insurance applies to "bodily injury" and "property damage" only if:

        (1)    The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

        (2)    The "bodily injury" or "property damage" occurs during the policy period; . . .

- The Policy defines these terms as follows:

    a.    "Bodily injury" means bodily injury, sickness, or disease sustained by a person, including death, resulting from any of these at any time.

    b.    "Property damage" means:

        (1)    Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

        (2)    Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

        *     *     *

    c.    "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

- The Policy contains the following exclusions:

**Exclusion 2(j).  Damage to Property**

The Policy excludes "property damage" to:

6

       *     *     *

(5)   That particular part of real property on which you [Smith Defendants] or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6)   That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

   *     *     *

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products completed operations hazard."

**Fungi or Bacteria Exclusion**

The insurance does not apply to:

a.   "Bodily injury" or "property damage" which would not have occurred in whole or in part, but for the actual, alleged, or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material, or product contributed concurrently or in any sequence to such injury or damage.

b.   Any loss, cost, or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

   *     *     *

"Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

**Absolute Exclusion for Fraud, Misrepresentation, Deceit, or Suppression or Concealment of Fraud**

This insurance does not apply to any claim or lawsuit for damages arising out of fraud, misrepresentation, deceit, suppression or concealment of fact, whether intentional, unintentional, innocent, negligent, willful, malicious, reckless or wanton, including, but not limited to an action or lawsuit demanding or seeking damages or recovery based on direct liability, vicarious liability, or agency principles. We will not make any payment if those payments arise out of any claim or lawsuit excluded by this endorsement. We have no duty to defend any insured against any claim or lawsuit for damages to which this insurance does not apply.

This exclusion applies regardless of:

(1)     Whether such operations are or were conducted by you or on your behalf; or

(2)     Whether the operations are or were conducted for you or for others.

•   The Policy further requires the following conditions:

a.      You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

(1)     How, when, and where the "occurrence" or offense took place;

(2)     The names and addresses of any injured persons and witnesses; and

8

(3)    The nature and location of any injury or damage arising out of the "occurrence" or offense.

b.    If a claim is made or "suit" is brought against any insured, you must:

(1)    Immediately record the specifics of the claim or "suit" and the date received; and

(2)    Notify us as soon as practicable

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

c.    You and any other involved insured must:

(1)    Immediately send us copies of any demands, notices, summonses, or legal papers received in connection with the claim or "suit";

(2)    Authorize us to obtain records and other information;

(3)    Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

(4)    Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

*See* Docs. 1 ¶¶ 1-26, 9 ¶¶ 1-26, 10 ¶¶ 1-26, 26 at 3-10, 30 at 3-6, 31 at 1-2.

## IV. Standard of Review

Under Federal Rule of Civil Procedure 56, summary judgment is proper if there is no genuine dispute as to any material fact and the moving party is entitled to

9

judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) ("[S]ummary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.") (internal quotation marks and citation omitted).[3]  The party requesting summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the moving party has met its burden, Rule 56(e) requires the non-moving party to go beyond the pleadings in answering the movant. *Id.* at 324. By its own affidavits – or by the depositions, answers to interrogatories, and admissions on file – it must designate specific facts showing that there is a genuine issue for trial. *Id.*

The underlying substantive law identifies which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor

---

[3]Congress amended Rule 56 in 2007 in conjunction with a general overhaul of the Federal Rules of Civil Procedure.  The Advisory Committee was careful to note, however, that the changes "are intended to be *stylistic only*." Adv. Comm. Notes to Fed. R. Civ. P. 56 (2007 Amends.) (emphasis added). Consequently, cases interpreting the previous version of Rule 56 are equally applicable to the revised version. *E.g.*, *Wooten v. Walley*, No. 2:07-CV-701-WKW[WO], 2008 WL 4217262, at *2 n.5 (M.D. Ala. Sep. 12, 2008).

of the non-movant. *Chapman*, 229 F.3d at 1023 (citation omitted). Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. *Anderson*, 477 U.S. at 248. A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* If the evidence presented by the non-movant to rebut the moving party's evidence is merely colorable, or is not significantly probative, summary judgment may still be granted. *Id.* at 249 (internal citations omitted).

How the movant may satisfy its initial evidentiary burden depends on whether that party bears the burden of proof on the given legal issues at trial. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993) (citation omitted). If the movant bears the burden of proof on the given issue or issues at trial, then it can only meet its burden on summary judgment by presenting *affirmative* evidence showing the absence of a genuine issue of material fact – that is, facts that would entitle it to a directed verdict if not controverted at trial. *Id.* (citation omitted). Once the moving party makes such an affirmative showing, the burden shifts to the non-moving party to produce "significant, probative evidence demonstrating the existence of a triable issue of fact." *Id.* (citation omitted).

For issues on which the movant does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways. *Id.* at 1115-16

(citation omitted). First, the movant may simply show that there is an absence of evidence to support the non-movant's case on the particular issue at hand. *Id.* at 1116. In such an instance, the non-movant must rebut by either (1) showing that the record in fact contains supporting evidence sufficient to withstand a directed verdict motion, or (2) proffering evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency. *Id.* at 1116-17 (citation omitted). When responding, the non-movant may no longer rest on mere allegations; instead, it must set forth evidence of specific facts. *Lewis v. Casey*, 518 U.S. 343, 358 (1996) (citation omitted). The second method a movant in this position may use to discharge its burden is to provide affirmative evidence demonstrating that the non-moving party will be unable to prove its case at trial. *Fitzpatrick*, 2 F.3d at 1116. When this occurs, the non-movant must rebut by offering evidence sufficient to withstand a directed verdict at trial on the material fact sought to be negated. *Id.*

## V. Analysis

### A. Introduction

As stated, the substantive law identifies which facts are material and which are irrelevant for summary judgment purposes. *Anderson*, 477 U.S. at 248. Because this is a diversity action, state substantive law will determine whether EMC has a duty to defend or indemnify the Smith Defendants. *See Erie R.R. Co. v. Tompkins*, 304 U.S.

64, 78 (1938); *see also Manuel v. Convergys Corp.*, 430 F.3d 1132, 1139 (11th Cir. 2005) ("[A] federal court sitting in diversity will apply the choice of law rules for the state in which it sits.") (citation omitted). Alabama law applies the doctrine of *lex loci contractus* to contract claims. *Colonial Life & Accident Ins. Co. v. Hartford Fire Ins. Co.*, 358 F.3d 1306, 1308 (11th Cir. 2004). The parties do not dispute that the Policy was formed in Alabama or that Alabama was the site of the conduct giving rise to the harms alleged in the underlying action. The court has therefore employed Alabama law in resolving the instant action. *See id.* ("The doctrine [of *lex loci contractus*] states that a contract is governed by the laws of the state where it is made except where the parties have legally contracted with reference to the laws of another jurisdiction.") (internal quotation marks and citation omitted).

Under Alabama law, an insurer's duties of defense and indemnity are related but distinct and thus require separate analysis. *Porterfield v. Audubon Indem. Co.*, 856 So. 2d 789, 792 (Ala. 2002) (citation omitted). Specifically, an insurer's duty to defend is more extensive than its duty to indemnify. *U.S. Fid. & Guar. Co. v. Armstrong*, 479 So. 2d 1164, 1168 (Ala. 1985) (citations omitted) ("*Armstrong*"). The complaint allegations primarily govern the scope of the duty to defend. *Id.* (citation omitted). If these allegations reveal a claim within the policy coverage, then the insurer must defend, regardless of the ultimate liability of the insured. *Ladner & Co.*

*v. S. Guar. Ins. Co.*, 347 So. 2d 100, 102 (Ala. 1977) (citation omitted). But an insurer's duty to defend is not solely determined from the facts alleged in the complaint. *Id.* at 103. A court may look to facts that can be proved by admissible evidence. *Pac. Indem. Co. v. Run-A-Ford Co.*, 161 So. 2d 789, 795 (Ala. 1964). When a complaint alleges both acts covered under a policy and acts not covered, the insurer must at least defend the covered allegations. *Blackburn v. Fid. & Deposit Co. of Md.*, 667 So. 2d 661, 670 (Ala. 1995) (citation omitted).

The court notes the unusual allocation of evidentiary burdens in this case at this juncture. Under Alabama law, the insured party bears the burden of proving coverage by showing that a claim falls within the policy. *See Colonial Life & Accident Ins. Co. v. Collins*, 194 So. 2d 532, 535 (1967) (citation omitted). Thus the defendants in this case must ultimately prove that the Policy covers the Waldrips' underlying claims. However, as EMC is requesting summary judgment in the instant action, the burdens are presently reversed; it bears the burden of proving non-coverage. *See supra* 9-12. Specifically, because EMC does *not* bear the ultimate burden of proving policy coverage at trial, it can succeed here *either* by (1) showing an absence of evidence in the defendants' case on this issue, or (2) providing affirmative evidence demonstrating that the defendants will be unable to prove their case at trial. *Fitzpatrick*, 2 F.3d at 1116 (emphasis added).

As explained below, EMC is entitled to partial summary judgment. It has proven that it has no duty under the Policy to defend the Smith Defendants against the Waldrips' faulty workmanship, negligence, or misrepresentation claims. The first two allegations do not describe an "occurrence" to which the Policy's coverage might apply, and the Policy absolutely excludes any misrepresentation claims from coverage. But EMC has failed to show that it need not defend the Smith Defendants against the Waldrips' deceptive trade practice claims. Because it has not sufficiently developed its argument on this issue, it does not merit summary judgment on it. Finally, as the underlying suit is still pending in state court, this court will abstain from ruling on EMC's alleged duty to indemnify the Smith Defendants for any damages they might incur there.

### B. Preliminary Issue: Notice

EMC argues that the Smith Defendants' delay in notifying them of the underlying suit was "unreasonable" as a matter of law. Doc. 26 at 25-30. This claim, if valid, would itself preclude any coverage, so the court must address it first. The court finds summary judgment on this issue unwarranted. As noted, the Waldrips filed the underlying action on September 15, 2010. Doc. 27-1 at 8. They served the Smith Defendants on October 29, 2010. Doc. 27-8 at 4. The Smith Defendants waited until January 6, 2011, before informing EMC of the Waldrips' claims. Doc. 27-10 at 3-4.

The Policy required that the Smith Defendants notify EMC in writing "as soon as practicable" of a claim or suit made against it. Doc. 27-2 at 24. It also required that the Smith Defendants "immediately" send EMC copies of "any demands, notices, summonses, or legal papers received in connection with the claim or 'suit.'" *Id.* EMC considers the Smith Defendants' almost ten-week delay in performing these actions sufficiently protracted to ask the court to deem it a contract breach.

Compliance with the notice requirements in an insurance policy is a condition precedent to recovery. *See Pharr v. Cont'l Cas. Co.*, 429 So. 2d 1018, 1019 (Ala. 1983). Failure of the insured to comply with notice requirements relieves the insurer of liability. *Reeves v. State Farm Fire & Cas. Co.*, 539 So. 2d 252, 254 (Ala. 1989) (citations omitted). The Alabama Supreme Court has routinely construed the terms "as soon as practicable" and "immediately" to require that notice be given "within a reasonable time in view of all the facts and circumstances of the case." *S. Guar. Ins. Co. v. Thomas*, 334 So. 2d 879, 882 (Ala. 1976) (citations and internal quotation marks omitted) ("*Thomas*"). The only factors a court may consider in determining the reasonableness of a delay in giving notice to an insurer are (1) the length of the delay and (2) the reasons for the delay. *U.S. Fid. & Guar. Co. v. Baldwin County Home Builders Ass'n*, 770 So. 2d 72, 75 (Ala. 2000) (citation omitted). Prejudice to the insurer from any such delay is immaterial. *Id.*

Where facts are disputed or where conflicting inferences may reasonably be drawn from the evidence, the question of whether a party's delay in giving notice is reasonable is one for the trier of fact to resolve. *Id.* (citation omitted). Parties may reasonably draw such conflicting inferences where the insured justifies its delay with mitigating evidence. *Travelers Indem. Co. of Conn. v. Miller*, 86 So. 3d 338, 343-44 (Ala. 2011) (citation omitted). However, if the facts are undisputed, and the insured does not show justification for the protracted delay, the court may find the delay unreasonable as a matter of law. *Id.*

EMC insinuates that notice delays surpassing a certain time window *on their own* merit summary judgment under Alabama law. *See* Doc. 26 at 28-29 (citing *Am. Fire & Cas. Co. v. Tankersley*, 116 So. 2d 579 (Ala. 1959) (*"Tankersley"*); *Thomas*; *Acceptance Ins. Co. v. Shafner*, 651 F. Supp. 776 (N.D. Ala. 1986) ("*Shafner*")). None of its cited decisions support this notion. Rather, it is the intersection of a lengthy delay *and* the lack of justification that warrants summary judgment. In *Tankersley*, the insured party had not informed its insurer of the underlying suit until almost nine months after the accident had occurred. 270 So. 2d at 580. The trial court had asked the jury to decide both (1) whether the notice given was "as soon as practicable" under the contract and (2), if so, whether the delay prejudiced the insurer. *Id.* at 581. The jury had concluded that the given notice did not satisfy the contractual

17

language but also that the delay had not prejudiced the insurer. *Id.* On appeal, the Supreme Court of Alabama held that the second instruction was superfluous. *Id.* at 582. It simply offered no comment on the length of delay; it ruled in favor of the insurer only because the jury had done so on the first question. The unreasonableness of Tankersley's delay was thus a factual question in that case. The decision offers no aid to EMC here.

*Thomas* is more relevant to the present action, but it does not make EMC's case. There, the insured party waited until six months after the accident to notify his insurer. 334 So. 3d at 881. The Supreme Court of Alabama found his delay unreasonable as a matter of law because he had no justifiable excuse. *Id.* at 885. It emphasized that the injured plaintiff had written the insured a letter two weeks after the incident (1) informing him that he intended to file suit and (2) recommending that the insured notify his insurance carrier. *Id.* at 881, 884. The insured's months-long delay after this notice was therefore inexcusable. The *Shafner* court employed similar reasoning in granting summary judgment for the insurer in that case. *See* 651 F. Supp. at 777 ("Shafner did not notify his insurance carrier until approximately six months after he received the letter from [the plaintiff] advising him to notify his insurance carrier."). Both cases involved insured parties who had been specifically notified by the injured parties of an impending lawsuit. In both cases, the court found the

18

insured's later delay in notifying their carrier unjustified. These facts greatly differ from the instant case.

EMC has simply not proven that it deserves summary judgment on this issue under Alabama law. Reasonable minds can differ on whether ten weeks is an unreasonable delay in notifying one's insurer of a lawsuit. Furthermore, EMC provides no evidence that the Smith Defendants knew of the suit before they were served in the underlying action. Unlike the defendants in *Thomas* and *Shafner*, there is no evidence that the Smith Defendants received any direct communication from the Waldrips suggesting that they would file suit before this service. Finally, that the delay coincided with the winter holiday season is at least a plausible justification for its length. *See* Doc. 30-1 at 4 ("Due to the Thanksgiving and Christmas holidays, I was unable to reach the different insurance agents on my first attempt and I had to call several times until I discovered the name of the insurance carrier who had written my general liability policy."). Because the court must make all reasonable inferences in favor of the Smith Defendants as the non-moving parties, it is unwilling to rule that their delay in notifying EMC was unreasonable as a matter of law.

### C. Duty to Defend

Given that the Smith Defendants' delay in notifying EMC of the underlying suit was not unreasonable as a matter of law, the court must now address the scope,

19

if any, of EMC's duty to defend the Smith Defendants in that suit. It concludes that EMC has no duty to defend the Smith Defendants against the Waldrips' faulty workmanship, negligent abandonment, or misrepresentation claims. However, the court will deny EMC summary judgment on the issue of whether it must defend the Smith Defendants against the former homeowners' deceptive trade practices claim.

In its underlying Complaint, the Waldrips advance five claims against the Smith Defendants:

- Negligence of Construction
- Breach of Contract
- Fraudulent Misrepresentation
- Innocent Misrepresentation
- Deceptive Trade Practices

Doc. 27-1 ¶¶ 15-46. EMC maintains that it has no duty to defend the Smith Defendants against any of these claims. The Policy it issued the Smith Defendants only covers "property damage" and "bodily injury" caused by "occurrences." Doc 27-2 at 15 ("Commercial General Liability Coverage Form"). EMC argues that none of the Waldrips' allegations describe an "occurrence." Doc. 26 at 14-22.

### "Occurrence"

EMC only makes its case with the first two claims above. The Policy defines an "occurrence" as "an accident, including continuous or repeated exposure to

substantially the same general harmful conditions." Doc. 27-2 at 29. Under Alabama law, the term "accident" means "an unintended and unforeseen injurious occurrence; something that does not occur in the usual course of events or that could be reasonably anticipated." *Hartford Cas. Ins. Co. v. Merchs. & Farmers Bank*, 928 So. 2d 1006, 1011 (Ala. 2005) ("*Hartford*") (citing *St. Paul Fire & Marine Ins. Co. v. Christiansen Marine, Inc.*, 893 So.2d 1124, 1136 (Ala. 2004)). In other words, an accident is "something unforeseen, unexpected, or unusual." *Id.* (quoting *U.S. Fid. & Guar. Co. v. Bonitz Insulation Co. of Ala.*, 424 So. 2d 569, 572 (Ala. 1982) ("*Bonitz*")). Indeed, the word "accident" in accident policies "means an event which takes place without one's foresight or expectation. A result, though unexpected, is not an accident; the means or cause must be accidental." *Am. Safety Indem. Co. v. T.H. Taylor, Inc.*, No. 2:10CV48-MHT, 2011 WL 1188433, at *4 (M.D. Ala. Mar. 29, 2011) (quoting *Black's Law Dictionary* (9th Ed. 2009)), *aff'd*, No. 11-12245, 2013 WL 978804 (11th Cir. Mar. 14, 2013) (unpublished). The common factors of *intent* and *foreseeability* thus guide the court's analysis here.

### a. Negligence

The Waldrips' negligence claim falls short of the Policy's definition of "occurrence." Under Alabama law, the term "accident" does not necessarily exclude human negligence. *Moss v. Champion Ins. Co.*, 442 So. 2d 26, 28 (Ala. 1983)

("*Moss*") (citing *Bonitz*, 424 So. 2d at 571). Rather, an insured party only loses coverage in such situations where it (1) intended to cause damage or (2) did not take reasonable steps to prevent the damage. *See Moss*, 442 So. 2d at 29 ("[T]he authorities absolve the insured where there is a lack of intent to cause damage or where he has taken reasonable steps to prevent damage and thus could not reasonably foresee the damage caused.").

In *Moss*, a dissatisfied homeowner sued a general contractor insured under a CGL policy. *Id.* at 26. The homeowner claimed that the contractor was negligent in re-roofing her home and that his negligence allowed rainwater to enter the home and damage it. *Id.* In the declaratory action filed by the insurer, the trial court ruled that the insurer did not have to defend the contractor in the underlying action. *Id.* at 26-27. The court maintained that the homeowner's water damage was not an "occurrence" under the policy because rain was foreseeable during that time of the year in that region. *Id.* The Supreme Court of Alabama reversed the trial court. *Id.* at 29. It reasoned that the contractor was not responsible for either (1) the rain, (2) his employees' insubordinate abandonment of the site, or (3) the resulting delays in finishing it. *Id.* The court emphasized that the contractor had instructed his employees to protect the roof from exposure. *Id.* He therefore did not intend the damage, nor could he have reasonably foreseen his employees' negligent disobedience. *Id.* The

22

resulting water damage was thus an "occurrence" under the policy. *Id.*

The Waldrips assert in the underlying action that the Smith Defendants were negligent in two respects. First, they claim that the Smith Defendants were negligent in abandoning the construction of their home and failing to secure the premises. *See* Doc. 27-1 ¶ 17. This negligence allegedly subjected the home to damage by vandals and the elements. *Id.* The Waldrips specifically claim that "moisture has caused deterioration of certain building components and mold growth is present throughout the home." *Id.* ¶ 12. Further, vandals supposedly entered the home and stripped it of valuable components, including copper wiring. *Id.*; Doc. 30, Ex. 4 at 462-63.

These allegations, if true, place the Smith Defendants in a different situation than the contractor in *Moss*. According to the Waldrips, the Smith Defendants made a conscious decision to leave the work site, and they did not take any steps to protect the site from exposure. The rainwater intrusion into the construction site was thus "reasonably foreseeable" for the same reasons it was not in *Moss*: one may expect periodic rain to enter an open structure that one has not attempted to protect. This judgment also applies to trespassing and vandalism. As EMC persuasively argues in its brief, the Smith Defendants adopted a "deliberate course of conduct" that jeopardized the construction site's security. Doc. 26 at 22. They could have foreseen

the likelihood that third parties might enter such an abandoned site to commit theft.[4]

Such an incident does not qualify as "an unintended and unforeseen injurious occurrence." *Hartford*, 928 So. 2d at 1011 (citation omitted).

The Waldrips also claim the Smith Defendants were negligent in "failing to construct their home in a good and workmanlike manner, according to accepted standards and construction industry practices." Doc. 27-1 ¶ 18. In doing so, the Smith Defendants breached their duty to the Waldrips to provide them "with a finished home, built in accordance with all applicable building codes, construction industry standards, and terms of the contract, so as to minimize the damages associated with the known inherent risks of residential construction." Id. ¶ 16. This is essentially a faulty workmanship claim. The Supreme Court of Alabama has recently held:

> [F]aulty workmanship itself is not an occurrence but . . . [it] may lead to an occurrence if it subjects *personal property or other parts of the structure* to

---

[4]Mr. Waldrip, who apparently has a background in residential construction, admitted in his October 25, 2012, deposition that such an incident is commonplace:

Q. Okay. You know, are you familiar with how thieves or people will try to obtain copper out of abandoned buildings or buildings that are sitting vacant?

A. Yes.

Q. Okay. I mean, you are in the building business, you have seen that before?

A. Yes.

Doc. 30, Ex. 4, at 462. This admission strongly supports the inference that third-party theft of the kind the Waldrips allege is a foreseeable result of abandoning a construction site.

> "continuous or repeated exposure" to some other "general harmful condition" (e.g., the rain in *Moss*) and, as a result of that exposure, personal property or other parts of the structure are damaged.

*Town & Country Prop., LLC, v. Amerisure Ins. Co.*, 111 So. 3d 699, 706 (Ala. 2011) (citing *Moss* and *U.S. Fid. & Guar. Co. v. Warwick Dev. Co., Inc.*, 446 So. 2d 1021 (Ala. 1984) ("*Warwick*")) (emphasis added) ("*Town & Country*"). As EMC demonstrates in its brief, there was no damage in this case to affixed personal property or to a structure that existed before the construction commencement. Doc. 26 at 18. That is, the "work" was building a new home, rather than repairing or modifying an existing structure. The alleged water and mold-based deterioration occurred exclusively to this new structure. The Waldrips' claim thus does not characterize an "occurrence." *See Warwick*, 446 So. 2d at 1023 (holding that faulty workmanship claim did not describe "occurrence" defined under a CGL policy as "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the Insured").

The defendants do not adequately rebut these arguments. Regarding the negligent abandonment allegation, the Smith Defendants dispute that they "abandoned" the work site. *See* Doc. 30 at 3 ("At no time did the [Smith Defendants] abandon the work site after repeated pleas of the homeowners . . . nor did [they]

arbitrarily refuse to complete the construction contract."). They clearly mean to argue they did not *unjustifiably* abandon the site. They certainly left the site before finishing the home, apparently because of monetary disputes with the Waldrips. *See id.* ("The homeowners . . . failed to pay [the Smith Defendants] the necessary funds to complete the construction project subsequent to the homeowners modifying the construction plans increasing the size and dimensions of the structure thereby exhausting the loan proceeds originally obtained for the purpose of constructing the residence."). For the purposes of this action, it is only relevant that they do not dispute leaving the site without taking any protective action to secure it. So, they have not described a genuine dispute over material fact that would survive summary judgment. They also have not cited any Alabama law that calls into question the legal conclusions articulated above.

The Waldrips, on the other hand, reference several Alabama precedents in making their argument for coverage. Doc. 31 at 5-7. They specifically argue that *Moss*, *Bonitz*, *Warwick*, and *Town & Country* legitimate their claim that the Smith Defendants' faulty workmanship and their failure to close the windows at the Waldrips' home – including the resulting water damage – amounted to an "occurrence" under the Policy. *Id.* at 7. The court finds their argument unpersuasive for the reasons discussed above. The Waldrips do not address the various material

ways their allegations differ from those made by the claimants in the cited cases. The court accordingly finds that EMC owes no duty to defend the Smith Defendants against the Waldrips' negligence claim.

### b. Breach of Contract

Whether the Waldrips' contract breach claim qualifies as an occurrence is a more ambiguous question. The Alabama Supreme Court has not ruled definitively on the issue. *See Auto-Owners Ins. Co. v. Toole*, 947 F. Supp. 1557, 1563 (M.D. Ala. 1996) ("*Toole*") ("There is almost no Alabama law addressing if and when events giving rise to a contract dispute fall within the standard definition of occurrence.") (citing *Reliance Ins. Co. v. Gary C. Wyatt, Inc.*, 540 So. 2d 688, 691 (Ala. 1988) ("*Reliance*")). In *Reliance*, the Court issued a narrow ruling against the notion. 540 So. 2d at 691. The case concerned the breach of a lease agreement where the lessee, a construction company, failed to add the lessor, a crane company, to the CGL policy the construction company had obtained from an insurance carrier (as the lease agreement had decreed). *Id.* at 688-89. The Court ruled that this breach did not constitute an "occurrence" under the CGL policy. *Id.* at 690-91. Although that policy had language virtually identical to the Policy language in this case, the *Reliance* Court did not issue a holding that would control here. *See Toole*, 947 F. Supp. at 1564 ("To be honest, this court cannot lift from [the *Reliance* Court's] comments any

27

overall principle or principles that might guide the court in resolving the issue presented in the instant case.").

The court agrees with EMC that the Waldrips' contract claim does not state an "occurrence." The Waldrips allege that the Smith Defendants breached their agreement "by failing to complete construction of the home in a good and workmanlike manner in accordance with all construction standards, applicable building codes, and terms of the contract." Doc 27-1 ¶ 45. This accusation resembles the faulty workmanship claim analyzed above. It is *not* an allegation that is particularly unusual or that could not have been reasonably anticipated when the parties formed the contract. *See Hartford*, 928 So. 2d at 1011 (citation omitted); *see also* Doc. 26 at 17 ("There are no unexpected, unintended or unforeseen results alleged by [the Waldrips] . . . The [Smith Defendants] agreed in a contract to construct a home and the underlying action here arises out of the construction and deliberate subsequent abandonment of a home by [the Smith Defendants]."). Thus, the allegation does not describe an "accident" under Alabama law. The purpose of EMC's Policy was to protect the Smith Defendants from "liability for essentially accidental injury to person or property." *Owners Ins. Co. v. Shep Jones Constr., Inc.*, No. 08-AR-514-S, 2012 WL 1642169, at *5 (N.D. Ala. May 3, 2012). It was not meant to be a "guarantee or a warranty" that EMC certified the "timeliness and

28

quality" of the Smith Defendants' work. *Id.* Treating a standard contract breach as an "accident" triggering CGL policy coverage would radically alter such insurance agreements.

The defendants do not satisfactorily refute this conclusion. The Waldrips do not address their own contract claim specifically in their brief. To the degree they consider it to be a "faulty workmanship" allegation, their argument that such an allegation states an "occurrence" has already been considered and rejected. *See supra* 24-27. The Smith Defendants, on the other hand, summarily claim that "courts have concluded that faulty construction is an 'accident' and constitutes an occurrence." Doc. 30 at 11. The only support they marshal for this assertion is a decision recently issued by the Supreme Court of Texas. *See id.* at 12 (citing *Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1 (Tex. 2007) (construing <u>Texas</u> law to hold that allegations of unintended construction defects may constitute an "accident" or "occurrence" under a CGL policy)).

The court does not find this authority persuasive in this case for the reasons outlined above. Some of the most foreseeable incidents in the performance of a residential construction contract are that the builders will have cost overruns, use inadequate materials, fail to meet deadlines, or otherwise execute the project improperly. What the Waldrips complain of – whether it is characterized as defective

construction, faulty workmanship, or contract breach – is simply the opposite of an "accident" under Alabama law. EMC therefore does not have to defend the Smith Defendants against this claim.

### c. Misrepresentation

The Waldrips allege both fraudulent and innocent misrepresentation against the Smith Defendants in the underlying action. *See* Doc 27-1 ¶ 31 ("Defendants' misrepresentations were made either willfully to deceive, recklessly without knowledge, or by mistake and innocent."). As EMC shows in its brief, the Policy absolutely excludes *any* kind of misrepresentation claim from coverage, so whether the Waldrips' allegations qualify as occurrences under Alabama law is irrelevant. *See* Doc. 26 at 24-25 ("This insurance does not apply to any claim or lawsuit for damages arising out of . . . misrepresentation . . . whether intentional, unintentional, innocent, negligent, willful, malicious, reckless or wanton . . ."). Both the Smith Defendants and the Waldrips either explicitly or implicitly concede this point. *See* Doc. 30 at 11; Doc. 31 at 11 ("[E]ven should this Honorable Court find that this section applies, it would only apply to the misrepresentation count . . ."). EMC therefore has no duty to defend the Smith Defendants against these claims to the extent that the events giving

rise to them fall within the period the exclusion was in force.[5]

### d. Deceptive Trade Practices

Though EMC's motion requests summary judgment on all of the Waldrips' claims, EMC's brief does not present any legal argument or evidence to support a motion for summary judgment concerning the deceptive trade practices claim. In fact, EMC never mentions the claim in its brief's "Argument" section. The party moving for summary judgment bears the initial burden of presenting to a court the basis for its motion. *Celotex*, 477 U.S. at 323. EMC has not met this burden, and summary judgment is therefore due to be denied as to this claim.

### "Bodily Injury" and "Property Damage"

EMC attempts to claim safe harbor in its argument on the Waldrips' asserted damages. Rather than address the deceptive trade practices claim directly, EMC implies that the allegation could not qualify for coverage because the Waldrips have not described covered injury under the Policy. As stated, for the Policy to apply, an

---

[5]This exclusion only appears in the renewed Policy agreements issued by EMC to the Smith Defendants on February 1, 2009, and February 1, 2010, respectively. *See* Doc. 27-4 at 68; Doc. 27-6 at 7. It is unclear to the court whether the events giving rise to the misrepresentation claims occurred while this version was in effect or whether those events predated this version. The underlying Complaint filed by the Waldrips does not specify what time period they claim these misrepresentations took place, nor does any other filed document in the present action reveal such information. So the court will issue the limited holding described above unless and until further relevant information is disclosed in the underlying suit that clarifies the issue.

"occurrence" must have caused "bodily injury" or "property damage." Doc. 27-5 at 26. EMC maintains that (1) the Waldrips have not made a valid allegation of bodily injury, and (2) the Policy excludes any possible property damage caused by the Waldrips' claims. *See* Doc. 26 at 12-14, 22-23. The court disagrees with the first point, so there is no need to resolve the second. This conclusion is sufficient to foreclose summary judgment.

The Policy defines "bodily injury" as "bodily injury, sickness, or disease sustained by a person, including death, resulting from any of these at any time." Doc. 27-2 at 27. In their underlying Complaint, the Waldrips allege that they suffered "physical injury, mental anguish and emotional distress" as a "proximate result" of the Smith Defendants' actions. Doc. 27-1 ¶ 14(g). In later depositions, they specifically cited the following injuries:

- Mrs. Waldrip has had to double the dosage of Klonopin that she had formerly taken to combat dysautonomia. Doc. 30, Ex. 3, at 12-13.

- Mr. Waldrip suffers from hypertension, which he had not experienced before the dispute with the Smith Defendants and for which he now sees a physician. Doc. 30, Ex. 4, at 450.

- Mr. Waldrip now suffers from fatigue and sleeplessness, which aggravate his heart condition. *Id.* at 446-47.

Each of these asserted consequences describes a "bodily injury, sickness, or disease sustained by a person . . ." Doc. 27-2 at 27

EMC disputes the legitimacy of these damages. *See* Doc 26 at 12-14. It points to several verified answers the Waldrips gave to the Smith Defendants' interrogatories and requests for production in the underlying suit. *See id.* In these answers, the Waldrips deny that the Smith Defendants' actions have caused them to suffer any physical injury or emotional distress. *See id.* The Waldrips ascribe this contradiction to miscomprehension of the questions asked. *See* Doc. 31 at 1. They claim they did not understand that "physical injury" and "emotional distress" encompassed the injuries cited in their later deposition answers. *See generally* Doc. 30, Ex. 3, at 9-13; Doc. 30, Ex. 4, at 440-452. EMC argues that this explanation is insufficient. *See* Doc. 35 at 2-3. It disparages the Waldrips' depositions, which were taken after EMC filed summary judgment in the instant case. *Id.* It asserts that the Waldrips deployed these depositions to forestall summary judgment here, and it notes that Alabama law prevents a party from giving contradictory testimony just to avoid this result. *Id.* (citing *Doe v. Swift*, 570 So. 2d 1209, 1214 (Ala. 1990)).

The court would find EMC's argument more persuasive had the Waldrips not forthrightly alleged "physical injury, mental anguish and emotional distress" in the "Damages" portion of their Complaint. Doc. 27-1 ¶ 14(g). Under Alabama law, the court must privilege the complaint allegations in determining whether EMC has a duty to defend the Smith Defendants. *See Am. States Ins. Co. v. Cooper*, 518 So. 2d

708, 709 (Ala. 1987) ("An insurance company's duty to defend its insured is determined by the language of the insurance policy and by the allegations in the complaint giving rise to the suit against the insured.") (citing *Armstrong*, 479 So. 2d at. 1167). While the court may also look to admissible factual evidence in this scenario, *see, e.g.*, *Pacific Indemnity Corporation*, 161 So. 2d at 795, the court is not allowed to evaluate the Waldrips' credibility at the summary judgment stage. *Anderson*, 477 U.S. at 255. Finally, Rule 56 compels the court to make all reasonable inferences in favor of the non-moving parties. *Chapman*, 229 F.3d at 1023 (citation omitted). Taken together, these considerations support a finding that the Waldrips have stated a legitimate claim for "bodily injury" in the underlying action. The court will therefore deny summary judgment to EMC on the Waldrips' deceptive trade practices claim.

### D. Duty to Indemnify

Because the underlying action is still pending in state court, the court further concludes that the duty to indemnify issue is not yet ripe, and it will thus not rule on the issue. *See, e.g.*, *Allstate Ins. Co. v. Employers Liab. Assurance Corp.*, 445 F.2d 1278, 1281 (5th Cir. 1971) ("[N]o action for declaratory relief will lie to establish an insurer's liability . . . until a judgment has been rendered against the insured since, until such judgment comes into being, the liabilities are contingent and may never

34

materialize.")[6]; *Allstate Indem. Co. v. Lewis*, 985 F. Supp. 1341, 1349 (M.D. Ala. 1997) ("The duty to indemnify is not ripe for adjudication until the insured is in fact held liable in the underlying suit") (citation omitted). "It is simply inappropriate to exercise jurisdiction over an action seeking a declaration of the plaintiff's indemnity obligations absent a determination of the insureds' liability. . ." *Employers Mut. Cas. Co. v. All Seasons Window & Door Mfg., Inc.*, 387 F. Supp. 2d 1205, 1211–12 (S.D. Ala. 2005).

## V. Conclusion

For the reasons stated in this Memorandum Opinion, Plaintiff's Motion for Summary Judgment is **GRANTED in part** and **DENIED in part**. EMC has no duty to defend the Smith Defendants against the Waldrips' negligence, contract, or misrepresentation claims. However, the court denies EMC summary judgment on the Waldrips' deceptive trade practices claim. It also abstains from reaching the duty to indemnify question, as the underlying action is still pending in state court.

The court will separately enter an Order consistent with this Opinion.

**DONE** and **ORDERED** this the 12th day of June, 2013.

---

[6]This authority is controlling in the Eleventh Circuit. *See Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981) (holding that decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981, are binding in the Eleventh Circuit).

**VIRGINIA EMERSON HOPKINS**
United States District Judge